United States Court of Appeals
For the Eighth Circuit

_____

No. 21-3389
_____

Fluor Corporation

*Plaintiff - Appellant*

v.

Zurich American Insurance Company

*Defendant - Appellee*

Hartford Accident and Indemnity Company; Does 1-100

*Defendants*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 22, 2022
Filed: April 13, 2023
_____

Before COLLOTON, WOLLMAN, and STRAS, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Appellate Case: 21-3389   Page: 1   Date Filed: 04/13/2023 Entry ID: 5264796

Zurich American Insurance Company (Zurich) insured St. Joe Minerals Corporation (St. Joe) and its sole shareholder Fluor Corporation (Fluor) from 1981 to 1985. St. Joe operated a lead smelting plant in Herculaneum, Missouri. Residents of the town sued Fluor and St. Joe (then named Doe Run Resources Corporation (Doe Run)) in the early 2000s, alleging that they had been injured by the plant's release of lead and other toxins. Zurich agreed to defend the companies and paid $9.87 million in four settlements on behalf of both companies. Zurich also contributed more than $25 million to a settlement between Doe Run and remaining plaintiffs. Fluor went to trial, suffered an adverse jury verdict, and thereafter settled the claims for $300 million.

Zurich filed a declaratory judgment action against Fluor, which, in turn, filed a counterclaim alleging bad faith failure to settle.[1] The district court granted summary judgment to Zurich, concluding that the policy limited Zurich's liability on a per-occurrence basis and that the $3.5 million per-occurrence limit had been exhausted by Zurich's initial settlement payments. The court concluded that Zurich thus did not act in bad faith when it did not settle the claims against Fluor.

Fluor appeals, arguing that the district court erred in determining that the policy limited Zurich's liability on a per-occurrence and not a per-claim basis, which would have increased Zurich's liability to $21.5 million for the 1981 and 1982 policies. Fluor also contends that, regardless of whether the policy is limited on a per-occurrence or per-claim basis, the limits do not foreclose its claim. Finally, Fluor argues that it is entitled to partial summary judgment. Reviewing *de novo* and applying Missouri law, we reverse the policy-limits determination and remand for further proceedings. See Am. Fam. Mut. Ins. Co., S.I. v. Mid-Am. Grain Distribs., LLC, 958 F.3d 748, 752 (8th Cir. 2020) (standard of review); Cont'l Cas. Co. v. Nat'l

---

[1] Fluor also alleged breach of the duty to defend and unreasonable refusal to pay, but those claims are not relevant to this appeal.

-2-

Union Fire Ins. Co. of Pittsburgh, PA, 812 F.3d 1147, 1149 (8th Cir. 2016) ("No one disputes Minnesota law governs, so it does.").

An insurance policy is interpreted according to the plain and ordinary meaning of its terms, "or the meaning that would be attached by an ordinary purchaser of insurance." Seaton v. Shelter Mut. Ins. Co., 574 S.W.3d 245, 247 (Mo. 2019) (quoting Doe Run Res. Corp. v. Am. Guar. & Liab. Ins., 531 S.W.3d 508, 511 (Mo. 2017)). Courts should evaluate policies as a whole when interpreting policy provisions. Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132, 135 (Mo. 2009). When an endorsement conflicts with the policy's terms, the endorsement prevails. Merlyn Vandervort Invs., LLC v. Essex Ins. Co., Inc., 309 S.W.3d 333, 338 (Mo. Ct. App. 2010) (citing Abco Tank & Mfg. Co. v. Fed. Ins. Co., 550 S.W.2d 193, 198 (Mo. 1977)). Moreover, the last antecedent rule provides that a limiting clause "should ordinarily be read as modifying only the noun or phrase that it immediately follows." Paroline v. United States, 572 U.S. 434, 447 (2014) (quoting Barnhart v. Thomas, 540 U.S. 20, 26 (2003)). The last antecedent rule is not absolute, however, and can "be overcome by other indicia of meaning." Id. (quoting Barnhart, 540 U.S. at 26)). Finally, the scope of subparts canon recognizes that "[m]aterial within an indented subpart relates only to that subpart." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 156 (2012).

The Declarations in the policies at issue here set forth the limits for comprehensive general liability, which included bodily injury liability.[2] The Declarations limited Zurich's liability on an "each occurrence" basis. Endorsement 7 amended the Declarations, however, stating:

---

[2]The parties rely upon the language from the policies issued in 1981 and 1982. This opinion cites the 1981 policy, which is identical in all material respects to the 1982 policy. We have omitted certain capitalizations for ease of reading.

-3-

Appellate Case: 21-3389    Page: 3    Date Filed: 04/13/2023 Entry ID: 5264796

> It is agreed that with respect to limits of liability for comprehensive general liability as designated under Item 3 of the policy declarations is amended to read:
> 
>> 500,000 each claim
>> 500,000 each aggregate as respects incidental professional liability endorsement.

Fluor argues that Endorsement 7 amended the Declarations' limitations in a manner that limited comprehensive general liability—which, again, includes bodily injury liability—to a per-claim basis. The plain language of Endorsement 7's introductory clause, "limits of liability for comprehensive general liability," supports Fluor's reading. By contrast, Endorsement 7's limiting language, "as respects incidental professional liability endorsement," was placed in an indented subpart. Applying the last antecedent rule, Endorsement 7's limiting clause applied only to the immediately preceding phrase, "500,000 each aggregate." The scope of subparts canon leads to the same conclusion.

Zurich argues that the last antecedent rule should not apply here, because there were other indicia that the policy intended to apply a per-occurrence limit to Zurich's comprehensive general liability. Zurich contends that Endorsement 7 provided the limits of liability for incidental professional liability coverage, which it asserts were not set forth elsewhere in the policy. But Endorsement 11, which set forth the terms for incidental professional liability, provided those precise limits:

> **The total liability of the company** for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons as the result of any one occurrence **shall not exceed the limit of bodily injury liability stated in the Declarations** as applicable to "each occurrence".

(emphasis added). Accordingly, the Declarations provided the limits of liability for incidental professional liability coverage.

-4-

Zurich also argues that reading Endorsement 7 as amending the comprehensive general liability limits is contrary to a holistic reading of the policy because it contradicts other important terms. When a contradiction arises, however, we enforce the policy "as altered by the endorsement." Merlyn Vandervort Investments, LLC, 309 S.W.3d at 338 (quoting Abco Tank & Mfg. Co., 550 S.W.2d at 198). Because it as a whole may be given effect with per-claim limits on Zurich's liability, we will enforce the policy as so amended by Endorsement 7.

We conclude that Endorsement 7 modified the limits of liability for comprehensive general liability, including bodily injury liability, to be on a per-claim basis. The district court thus erred by determining that the policy was limited on a per-occurrence basis.

Fluor argued before the district court that a determination of the actual limits was unnecessary because it could establish its claim by showing that Zurich failed to settle at a time when it did not believe that the policy limits had been exhausted. When the district court rejected this argument and proceeded to determine the policy limits, Fluor stipulated that Zurich's settlement payments had exhausted those limits. Fluor also argued that the court's policy-limits determination "prevented Fluor from proving up its bad faith failure to settle claim." The court agreed that Fluor could not establish its bad faith claim because the policy limits had been exhausted. D. Ct. Order of July 27, 2021, at 3. Fluor contends on appeal, however, that it does not matter whether the policy limits had been exhausted because it can still establish its bad faith claim because of Zurich's failure to timely inform Fluor that the policy limits had been exhausted. Fluor did not present this argument below, however, nor did it cite any authority regarding an insurance company's duty to provide such notice. We conclude that Fluor failed to preserve its argument that Zurich had not provided timely notice of exhaustion, and we therefore decline to consider it in the first instance. See Scott C. by and through Melissa C. v. Riverview Gardens Sch.

Appellate Case: 21-3389     Page: 5     Date Filed: 04/13/2023 Entry ID: 5264796

Dist., 19 F.4th 1078, 1082 (8th Cir. 2021) ("As a general rule, we do not consider issues that are raised for the first time on appeal.").

We also do not rule on the district court's denial of summary judgment on the first two elements of Fluor's claim because it was not a predicate to the final judgment. See Beadle v. City of Omaha, 983 F.3d 1073, 1076 (8th Cir. 2020) (explaining that an appeal "bring[s] up for review all of the previous rulings and orders that led up to and served as a predicate for that final judgment" (quoting Greer v. St. Louis Reg'l Med. Ctr., 258 F.3d 843, 846 (8th Cir. 2001))).

The judgment is reversed and the case is remanded for further proceedings consistent with the views set forth herein.

COLLOTON, Circuit Judge, dissenting.

From 1981 to 1983, Zurich American Insurance Company provided comprehensive general liability insurance coverage to Fluor Corporation for damages due to bodily injury or property damage in the amount of $500,000 per occurrence. One of many endorsements to the policies provided coverage for damages because of bodily injury arising from "incidental professional liability" in the amount of $500,000 for each claim, up to an aggregate of $500,000. Fluor argues, however, that the endorsement concerning incidental professional liability transformed the entire policy into an "each claim" policy without limits on liability per occurrence. Accepting Fluor's position would result in a $20 million windfall recovery for which the company did not pay premiums. The district court properly construed the policy as providing comprehensive general liability coverage up to $500,000 per occurrence, and its judgment should be affirmed.[3]

---

[3]The 1981-82 policy was an extension of a 1980-81 policy that Zurich issued to a company that Fluor acquired in 1981. The parties entered into another policy for

-6-

Appellate Case: 21-3389     Page: 6     Date Filed: 04/13/2023 Entry ID: 5264796

The insurance policy begins with a Declarations page, excerpted as follows:

| Coverage Part(s) | ☒ Comprehensive General Liability Insurance ☐ Completed Operations and Products Liability Insurance | | | | ☐ Manufacturers' and Contractors' Liability Insurance ☐ Owners', Landlords' and Tenants' Liability Insurance† | | |
|---|---|---|---|---|---|---|---|
| Coverage(s) | A — Bodily Injury Liability | | B — Property Damage Liability | | A — Bodily Injury Liability | B — Property Damage Liability | |
| Limits of Liability | each occurrence $500,000 | aggregate C S L | each occurrence $ | aggregate $ | each occurrence $ | each occurrence $ | aggregate† $ |
| Advance Premium(s) | $ INCL. | | $ INCL. | | $ | $ | |

† Aggregate not applicable if Owners', Landlords' and Tenants' Liability Insurance excludes structural alterations, new construction and demolition.

Item 3 provides that insurance is afforded for "comprehensive general liability." The item states limits of liability for (A) bodily injury liability and (B) property damage liability. The pre-printed form provides a box for a limit as to "each occurrence" for each type of liability, and a box for an "aggregate" limit for each type of liability.

Under bodily injury liability, an amount of "$500,000" is typed for "each occurrence." No amount is typed in the "each occurrence" box for property damage liability. The letters "C S L" are typed in the box for an "aggregate" limit under bodily injury liability. "C S L" is an abbreviation for "combined single limit," a term of art in the insurance industry. This term means that the limit of $500,000 stated for "each occurrence" is a single limit with respect to each occurrence for bodily injury liability and property damage liability "combined." No limit is stated in the "each occurrence" or "aggregate" box for property damage liability because the single combined limit applies to both types of liability arising from an occurrence. *See* H. Walter Croskey, et al., *California Practice Guide: Insurance Litigation* §§ 7:348, 7:350 (The Rutter Group 2022).

---

1982-83. The polices are identical in material respects, and this discussion refers to the 1981-82 policy except where noted.

Item 3 also provides that the policy includes insurance for incidental professional liability, as indicated by an "X" to the right of the term on the Declarations page in the excerpt below. No limits of liability for this coverage are stated in the Declarations.

| Coverage Part(s) and Coverage Part No(s). | Advance Premium(s) | Coverage Part(s) and Coverage Part No(s). | Advance Premium(s) |
|---|---|---|---|
| Automobile Physical Damage Insurance | $ | Storekeeper's Insurance | $ |
| Basic Automobile Liability Insurance | $ | INCIDENTAL PROF. LIA. | $ INCL. |
| Garage Insurance | $ | | $ |
| Owner's and Contractor's Protective Liability Insurance | $ | | $ |

(Refer to the following designated Coverage Part(s) for Coverages and Limits of Liability afforded thereunder.)

Twenty-six endorsements are attached to the policy. Seven are identified by title and a form number. Fourteen are numbered endorsements beginning with #1 through #13 and concluding with #18. All relevant endorsements, and the policy itself, originally took effect on the same date of February 4, 1980.

One endorsement is entitled "Comprehensive General Liability." This endorsement specifies that Zurich will pay on behalf of the insured all sums that the insured becomes legally obligated to pay as damages for bodily injury or property damage caused by an occurrence. Section III of the endorsement sets forth "Limits of Liability." This section provides that the total liability for damages because of bodily injury or property damage sustained as the result of any one occurrence will not exceed the limit of bodily injury or property damage, respectively, stated in the Declarations as applicable to "each occurrence."

Fluor's theory is that one line in one particular endorsement concerning limits of liability for "incidental professional liability" revolutionized the entire policy—the classic elephant hidden in a mousehole. Fluor maintains that Endorsement #7 transformed the contract from an "each occurrence" policy with carefully specified limits of liability for each occurrence to an "each claim" policy that dispensed with those limits.

-8-

Endorsement #7 provides as follows:

```
IT IS AGREED THAT WITH RESPECT TO LIMITS OF LIABILITY FOR
COMPREHENSIVE GENERAL LIABILITY AS DESIGNATED UNDER ITEM 3
OF THE POLICY DECLARATIONS IS AMENDED TO READ:
     500,000  EACH CLAIM
     500,000  EACH AGGREGATE AS RESPECTS INCIDENTAL PROFESSIONAL
              LIABILITY ENDORSEMENT.
```

Fluor contends that the reference to "$500,000 EACH CLAIM" in Endorsement #7 applies to all claims under the policy, not only to claims respecting incidental professional liability. Fluor maintains that this line in the endorsement nullifies other references in contemporaneous provisions to coverage for "each occurrence" and limits of liability for "each occurrence."

When interpreting an insurance contract in Missouri, a court seeks to effectuate the intent of the parties. A court "should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009); *see* Restatement (Second) of Contracts § 202(2) (1981). "[N]o substantive clause should be allowed to perish by construction unless unsurmountable obstacles stand in the way of any other course." *Soukup v. Emps.' Liab. Assurance Corp.*, 108 S.W.2d 86, 92 (Mo. 1937). "[L]ooking to the instrument as a whole, courts should give such construction that each clause will have some effect and perform some office; seeming contradictions must be harmonized, if that course is possible; a construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with general intent." *Id.*; *see Kyte v. Am. Fam. Mut. Ins. Co.*, 92 S.W.3d 295, 299 (Mo. Ct. App. 2002).

Appellate Case: 21-3389   Page: 9   Date Filed: 04/13/2023 Entry ID: 5264796

Fluor advances three arguments why Endorsement #7 supposedly transforms the policy's coverage from insurance based on "each occurrence" with defined limits to insurance based on "each claim" with no limits per occurrence. Even viewing Endorsement #7 in artificial isolation, these contentions are unpersuasive. When the endorsement is considered properly as part of the policy as a whole, context demonstrates convincingly that the district court was right to reject Fluor's submission.

Fluor first argues that unless Endorsement #7 is understood to revolutionize the policy, the reference to "comprehensive general liability" in the endorsement would be superfluous. In referring to Item 3 of the Declarations page, however, the parties naturally specified which of the coverage parts was amended. The parties might have left the coverage part unspecified, and required the reader to infer the coverage part from the fact that incidental professional liability is a subcategory of comprehensive general liability. But the clarity gained by including the term is hardly the sort of redundancy that supports an inference that the parties intended *sub silentio* to make a dramatic revision of the policy within one line of one endorsement. Contracting parties, like legislatures, sometimes employ arguable redundancy to ensure that their intent is communicated and understood, or simply due to inadvertence or shortcomings of human communication. *See Barton v. Barr*, 140 S. Ct. 1442, 1453 (2020); *Brazil v. Auto-Owners Ins. Co.*, 3 F.4th 1040, 1043-44 (8th Cir. 2021) ("The canon against surplusage does not require courts to read a contract in a way that contains no surplusage."); *In re SRC Holding Corp.*, 545 F.3d 661, 670 (8th Cir. 2008) ("Nothing prevents the parties from using a 'belt and suspenders' approach . . . in order to be 'doubly sure.'"); *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 311 (7th Cir. 2021). Fluor's contention about redundancy is particularly unpersuasive here, because the parties used similar redundancy elsewhere. *See Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2073 (2022) (Sotomayor, J., concurring in the judgment in part and dissenting in part); *TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 577 (6th Cir. 2010). In the 1982 policy,

Appellate Case: 21-3389     Page: 10     Date Filed: 04/13/2023 Entry ID: 5264796

Endorsements #36, #38, and #39 refer to changing insurance for "comprehensive general liability." As with Endorsement #7, each of the three 1982 endorsements proceeds to specify a distinct subcategory of coverage addressed by the endorsement, even though each subcategory is part of coverage for "comprehensive general liability." R. Doc. 687-3, at 76, 78-79.

Fluor next invokes the formatting of Endorsement #7 and the "scope-of-subparts canon." This argument, however, seeks to place dispositive weight on a canon of construction that does not match the text of the contract. Even when fully applicable, canons of construction are not absolute rules; they provide "clues" to the meaning of a text that must be considered with other indicators and balanced according to the clarity and weight of each signal. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 59 (2012). In this case, the cited canon does not support Fluor's proposed policy interpretation.

The scope-of-subparts canon applies to a text that is formatted as follows:

> 1.1 Xxxx xxxx xxxx xxxxxxxx xxxx xx xxxx xx xxxxxxxx xxx xxxxxxxx xxx xxx xxxxxxxx:
>   (A) Xxxx xxxx xxxx xxxxxxxx xxxx xx xxxx xx xxxxxxxx xxx xxxxxxx xxx xxx xxxxxxxx;
>   (B) Xxxx xxxx xxxx xxxxxxxx xxxx xx xxxx xx xxxxxxxx xxx xxxxxxx xxx xxx xxxxxxxx;
>   (C) Xxxx xxxx xxxx xxxxxxxx xxxx xx xxxx xx xxxxxxxx xxx xxxxxxx xxx xxx xxxxxxxx; if xxxx xxxx xxxx xxxxxxxx xxxx xx xxxxx.
> **Xxxx xxxx xxxx xxxxxxxx xxxx xx xxxx xx xxxxxxxx xxx xxxxxxx xxx xxx xxxxxxx. Xxxx xxxx xxxx xxxxxxxx xxxx xx xxxx xx xxxxxxxx.**

Scalia & Garner, *supra*, at 156. In such a passage, the material in boldface relates to all three subparts, but the *if*-clause in subpart (C) relates only to (C).

-11-

Fluor's argument regarding Endorsement #7 fails to acknowledge that punctuation and subpart designations are significant predicates for the full-throated application of this canon. In the prototype from Scalia & Garner, each subpart is introduced by a separate parenthetical letter (A) through (C), and each subpart concludes definitively with a period or semicolon. These features tend to show that each subpart is complete by itself. The leading court decision on the canon, *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335 (2000), follows the same pattern. In that case, each subpart was introduced with a parenthetical romanette (i) through (vii), and each subpart ended with a period. *See* 8 U.S.C. § 1231(b)(2)(E). The Court thus observed that "[e]ach clause is distinct and ends with a period, strongly suggesting that each may be understood completely without reading further." 543 U.S. at 344.

The text of Endorsement #7 is markedly different. The two indented lines of text are not designated with letters or numbers as though they are self-contained subparts. The first indented line of text does not end with punctuation to indicate that it is a complete subpart. Rather, the endorsement flows uninterrupted as though it is a textual sentence with a period appearing only at the end of the entire text. Contrary to Fluor's preferred canon, the format of Endorsement #7 suggests a single continuous utterance in which the closing reference to incidental professional liability qualifies the series of coverage amounts that come before it.

This inference is strengthened by the fact that the parties in Endorsement #5 to the same policy employed subpart designations and punctuation when they intended to create complete, self-contained subparts:

```
IT IS AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THE POLICY
IS HEREBY EXTENDED TO INCLUDE THE FOLLOWING ENTITIES.
1)  PARK 250 ASSOCIATES
    444 MADISON AVENUE
    NEW YORK, N.Y. 10022
2)  BEAVER COUNTY INDUSTRIAL DEVELOPMENT AUTHORITY, AS
    RESPECT BOND ISSUE FOR ANTI  POLLUTION CONTROLS AT
    INSUREDS JOSEPHTOWN LOCATION.
3)  EQUIBANK, N.A. AS RESPECTS BOND ISSUE FOR ANTI-
    POLLUTION CONTROLS AT THE INSUREDS JOSEPHTOWN LOCATION.
```

Like the model text cited by Scalia & Garner, Endorsement #5 includes three subparts that begin with parenthetical numerals and conclude with periods at the end of subparts (2) and (3). This format thus indicates that the qualifying language "as respect bond issue" in subparts (2) and (3) does not qualify the text in subpart (1). The structure displayed in Endorsement #5 is conspicuously missing from Endorsement #7. The difference in usage within the same document is a signal that the parties did not mean to employ self-contained subparts in Endorsement #7. *See* Akhil Amar, *Intratextualism*, 112 Harv. L. Rev. 747, 748 (1999).

Fluor's third argument relies on the "rule of the last antecedent," under which "relative and qualitative words are to be applied only to the words and phrases preceding them." *Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 688 (Mo. 2010). The company contends that Endorsement #7 transforms all comprehensive general liability insurance into "each claim" coverage, because the endorsement's reference to incidental professional liability modifies only the amount for "each aggregate" that appears immediately before the qualifying phrase. The "last-antecedent canon," however, competes here with the "series-qualifier canon," and the correct interpretation depends on context. *See Facebook, Inc. v. Duguid*, 141

-13-

S. Ct. 1163, 1169 (2021). Under the series-qualifier canon, when "there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." *State v. Champagne*, 561 S.W.3d 869, 873 (Mo. Ct. App. 2018) (quoting Scalia & Garner, *supra*, at 147); *see Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920). "Where several words are followed by a clause as much applicable to the first and other words as to the last, the clause should be read as applicable to all." *Spradling*, 313 S.W.3d at 688 (quoting *Norberg v. Montgomery*, 173 S.W.2d 387, 390 (Mo. 1943)); *see* Scalia & Garner, *supra*, at 147.

Even viewing Endorsement #7 in isolation, the series-qualifier canon naturally applies. This insurance policy, like most policies, states individual and aggregate coverage amounts in tandem. There is an amount of coverage for "each occurrence" or "each claim" and then an "aggregate" amount of coverage. The Declarations page is a pre-printed form with boxes designed for the two companion amounts. Endorsement #7 thus lends itself to a "straightforward, parallel construction that involves all nouns or verbs in a series," *Champagne*, 561 S.W.3d at 873 (quoting Scalia & Garner, *supra*, at 147)—that is, "each claim" and "each aggregate" are part of a single integrated series in an insurance policy. The qualifier—"as respects incidental professional liability endorsement"—is "as much applicable to the first and other words as to the last." *Spradling*, 313 S.W.3d at 688 (quoting *Norberg*, 173 S.W.2d at 390). As the district court remarked, "[i]t strains credulity to think the phrase '$500,000 EACH CLAIM' would be left blank as to the type [of] coverage it applied to, while the second phrase immediately below it for the aggregate limit specifically references an entirely different type of coverage." Ordinary principles of interpretation indicate that "incidental professional liability" modifies the coverage amounts for both "each claim" and "each aggregate." *See Duguid*, 141 S. Ct. at 1169; *United States v. Loyd*, 886 F.3d 686, 688 (8th Cir. 2018).

-14-

Beyond Fluor's three arguments that focus on Endorsement #7 standing alone, a proper examination of the whole text confirms that the endorsement addresses only coverage for incidental professional liability. The Declarations page and all relevant endorsements had the same effective date. But rather than harmonize Endorsement #7 with the rest of the policy as required by Missouri law, Fluor's interpretation would nullify several core provisions.

Item 3 of the Declarations sets forth limits of liability with respect to comprehensive general liability insurance for "each occurrence" and in the "aggregate." Yet Fluor's interpretation of Endorsement #7 would mean that the parties used a form with limits for "each occurrence" that they never intended to apply. Not only does Fluor's interpretation require believing that the parties used the wrong pre-printed form for the Declarations, but that the parties manually entered a meaningless figure of $500,000 into the box for limits of liability on "each occurrence" under Coverage A. Under Fluor's interpretation of Endorsement #7, the parties intended from the outset that liability would not be limited based on "each occurrence," so there would have been no reason to complete an "each occurrence" box on the Declarations page. There is, however, a ready means to harmonize the seeming contradiction: the endorsement states the "each claim" limits of liability for incidental professional liability only, and the Declarations page states the "each occurrence" limits for other comprehensive general liability.

Fluor's interpretation also falters on the simple exercise of attempting to implement its suggested amendment. Endorsement #7 calls for amending item 3 of the Declarations to read "$500,000 each claim." But the endorsement does not specify which part or parts of item 3 should be amended—coverage A for bodily injury, coverage B for property damage, or both. Fluor seems to propose an amendment only to coverage A for bodily injury, but that suggestion produces an anomaly: bodily injury coverage is then based on "each claim," while coverage B for property damage is based on "each occurrence," and the aggregate limit is an

-15-

incoherent "combined single limit" with respect to individual limits of two different types. If Fluor instead means that the amendment of "$500,000 each claim" applies to both types of coverage, then the Declarations page becomes a different jumble: bodily injury liability and property damage liability are each limited to $500,000 each claim, but the "aggregate" box continues to state a "combined single limit" that makes no sense when each coverage type states its own limit of liability.

Fluor's argument depends on a mix-and-match construction under which Endorsement #7 amends the Declarations page to provide a limit of "$500,000 each claim" for bodily injury under Coverage A, and to provide an "each claim" limit with no specified dollar amount for property damage under Coverage B. This suggested rewrite of the Declarations page is not supported by the text of Endorsement #7. The endorsement does not purport to amend Coverage B for property damage.

But when Endorsement #7 is properly understood to address only incidental professional liability, these several anomalies disappear. Endorsement #11 explains that the incidental professional liability endorsement covers only damages because of "bodily injury," not property damage. Therefore, it was unnecessary for Endorsement #7 to specify which coverage was at issue on the Declarations page: the amendment necessarily applies only to coverage A for bodily injury. Endorsement #7 sets a new "each claim" limit for bodily injury arising from incidental professional liability only, and sets a new "each aggregate" limit for incidental professional liability only. The Declarations page remains intact with its "each occurrence" limit and aggregate "combined single limit" for both bodily injury and property damage with respect to all other comprehensive general liability.

Fluor's interpretation creates other unacceptable contradictions in the policy. Fluor maintains that Endorsement #7 amended the Declarations page to *eliminate* the reference to "each occurrence" and to substitute a limit of liability of $500,000 for "each claim." At the same time, however, other endorsements specifically

-16-

contemplated that the Declarations page *includes* a limit of liability for "each occurrence." The Comprehensive General Liability endorsement, Form No. L9259A, provides that the insurer's total liability for damages because of bodily injury sustained as a result of any one occurrence will "not exceed the limit of bodily injury liability *stated in the declarations as applicable to 'each occurrence.'*" R. Doc. 687-2, at 16 (emphasis added). Fluor's interpretation of Endorsement #7 would nullify this core policy provision even though the two endorsements have the same effective date.

Endorsement #11 states that with respect to the insurance afforded by that endorsement, the total liability of the company for all damages because of bodily injury sustained as the result of any one occurrence will "not exceed the limit of bodily injury liability *stated in the declarations as applicable to 'each occurrence.'*" (emphasis added). Accepting Fluor's contention, however, would mean that the parties in Endorsement #11 referred to a phantom "each occurrence" limit of liability, because Endorsement #7 supposedly had amended the Declarations page to read "each claim" instead of "each occurrence." Fluor's interpretation of Endorsement #7 impermissibly attributes to the parties an intent to adopt meaningless provisions, including in a later-numbered endorsement.

The district court also noted that the 1983 and 1984 insurance contracts between the same parties confirmed the court's interpretation of Endorsement #7. The court cited endorsements in the later policies that specified "each claim" limits of liability for incidental professional liability alone, independent of the "each occurrence" limits for other comprehensive general liability. Fluor criticizes the district court's reliance on policies from later years, and posits that the parties could have reached an "each claim" agreement for 1981 and 1982 and then changed to an "each occurrence" agreement for 1983 and 1984. To accept Fluor's hypothesis, however, the court would have to believe that the parties substantially *reduced* insurance coverage in 1983 but *increased* the premium paid by the insured. Fluor

-17-

suggests that the parties changed from an "each claim" policy with no occurrence-based limits of liability in 1981 and 1982 to an "each occurrence" policy with carefully circumscribed limits of liability in 1983. But the parties at the same time increased the insured's premium payment from $94,982 to $114,000. R. Doc. 687-3, at 2; R. Doc. 687-4, at 4. Fluor's hypothesis is commercially unreasonable and is another reason to reject its contention that Endorsement #7 transformed the 1981 policy.

"Perhaps no interpretive fault is more common than the failure to follow the whole text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Scalia & Garner, *supra*, at 167. Fluor's proposed interpretation of the disputed policy unfortunately suffers from this fault. Fluor focuses on Endorsement #7 in isolation, invokes canons of construction that are unpersuasive even as to the endorsement standing alone, and ignores broader context that convincingly demonstrates the limited scope of Endorsement #7. The district court correctly determined that the policies at issue establish coverage for bodily injury that is subject to an "each occurrence" limit of liability as set forth on the Declarations page. Fluor's argument for recovery of an additional $20 million based on supposed "each claim" limits of liability should be rejected.

Given the majority's contrary conclusion, a lengthy discussion of the remaining issues on appeal would be largely academic. The district court correctly determined that the alleged injuries in this case arose from one occurrence, and that the relevant policy limits were exhausted before 2010. Once the policy limits were exhausted, the duty to defend or settle ended. Because the policy limits were exhausted before the disputed settlement negotiations in November and December 2010, Fluor cannot establish that Zurich acted in bad faith in refusing to settle a claim within the limits of the policy. I would therefore affirm the judgment of the district court.

_____

-18-